## EVERLASTING VALVE CO. v. SCHILLER.

District Court, E. D. Pennsylvania. June 8, 1927.

### No. 3251.

Trade-marks and trade-names and unfair competition ⟺70(3)—Maker of blow-off valves named "Everlasting" held not entitled to restrain use of name "Evertight" on defendant's valves as unfair competition.

Complainant, maker of blow-off valves to which it gave the name "Everlasting" *held* not entitled to an injunction to restrain defendant from using the name "Evertight" for his valves, conspicuously marked with his name, as unfair competition, where there was no deception as to origin actual or attempted, and sales were to a class of purchasers having expert knowledge of valves.

In Equity. Suit by the Everlasting Valve Company against Joseph F. Schiller, trading as the Joseph F. Schiller Valve Company. Decree for defendant.

Charles H. Howson and Howson & Howson, all of Philadelphia, Pa., for plaintiff.

Joshua R. H. Potts, of Chicago, Ill., and George B. Parkinson and Herman Seid, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached is that the bill should be dismissed.

### Discussion.

The maker of anything for which there is a trade demand always resents the intrusion of a competitor upon his special field. The existence of the trade opportunity just as surely invites competition. Usually there is some special quality in the manufactured product which appeals to purchasers. Upon this the manufacturer seizes and seeks to create a monopoly in what possesses this quality by adopting a slogan or name which expresses the thought of the possession of the desired quality, and then seeks to prevent all others from making the like appeal to purchasers in the hope the trade will come to believe that his product alone has the quality which the trade demands.

The subject-matter of this controversy is "blow-off valves." A desired quality we assume to be durability. We do so because

21 F.(2d)—41

the plaintiff calls its make "Everlasting" and the defendant calls his "Evertight," although the former is more especially directed to durability and the latter to a form of construction by which the valve when closed is kept tight by steam pressure. These are made in form, not words of description but names of designation. The value to the manufacturer, however, is in the belief that the name will carry the thought of the suggested quality, and, if a monopoly of that name and a denial to others of the use of any kindred word can be secured, the result will be that any purchaser seeking a valve having durability will by the make so named because of the created belief that there is no other, due to the fact that there is no other make so designated. The value in the name is, if the phrase is allowable, owing to the psychology of advertising. Doubtless there is a disposition to overvalue it. Surely any one who knows a valve, as all purchasers of valves may be presumed to do, knows of its durable qualities as well without the label as with it, and yet the manufacturer who had the sole right to call his make everlasting, or by any name expressive of the possession of lasting qualities, would be thought by himself and by all his competitors to have a trade advantage. There is something in a name, the oft-quoted verse to the contrary notwithstanding.

The experienced counsel for plaintiff of course do not claim for their client the exclusive right to boast of its make as durable, but, when they ask us to enjoin another from calling his make of valve "evertight" or from the use of any other word "similar" to the word "everlasting," they come close to asking for a monopoly of the claim to durability. This they do not ask, but they do not altogether escape the charge of making for it by the qualifying phrase that the one word is not to be used in place of the other "so as to be mistaken therefor." We find no fault with the distinction drawn, because we believe it to be sound, but the practical application asked to be made of it is fraught with danger that an injunction against the use of the word "evertight" or any other word which might be "mistaken" for "everlasting" would in effect operate as an injunction against any word which carried the thought of durability, because this is the thought conveyed by the word "everlasting."

The instant bill is aimed at unfair competition. If this is confined to a trespass upon the right of every manufacturer or producer to protection from having the make of another palmed off upon purchasers as his

make, the line of the distinction to be made cannot only be drawn, but can be practically enforced. This plaintiff has a clear right to this measure of protection, but it is equally clear that it is asking for much more than this. The gravamen of its complaint is such that its grievance is precisely the same as it would have been if it alone had the right to vend durable "blow-off valves." This is a right that it does not have. Its real complaint is not that defendant is vending a valve which purchasers mistake for plaintiff's make of valve but is building up a trade as the maker of a valve which brings the defendant in competition and trade rivalry with the plaintiff and the plaintiff's make of valve. The right to enjoin such competition is again a right which plaintiff does not have. The distinction between protection against defendant's make of valve being palmed off upon purchasers as the make of the plaintiff and the prohibition of any other make of valve having the qualities of plaintiff's make can easily be preserved in thought. It is the difference between a likeness which indicates two products to have a common manufacturing origin and a likeness which asserts them to have the same qualities. The thought is encased in the "just as good" phrase of common speech ascribed to druggists. Clear as the distinction is, it is nevertheless too subtle and elusive to be always capable of expression in an enforceable command. There are cases in which the distinction can be observed and preserved in its practical application; there are others in which any injunction which could be framed would either give a plaintiff practically nothing or it would give him much more than that to which he had a right. The instant case is on the borderland. Adjudged cases are always ruled upon their special facts. They may be roughly and inadequately classified as of five general types:

(1) Where the product bears a name which has no significance in common speech but is wholly a word of designation. Here the inference is justified that imitation of the name is prompted by an unfair motive.

(2) Where the product is described by a word of common speech chosen to commend the product as possessed of desirable qualities, and which has no direct bearing upon the origin of the product, but is essentially descriptive. Here no exclusive right to the use of the word as one of designation of origin can be given without conferring a monopoly of all products having the merits thereby imputed to that so designated.

(3) Where a word, although descriptive of quality, has been so long in use by a plaintiff and has become so identified with a particular origin of product that the word has taken on the meaning of the designation of the producer. Here care is always taken to differentiate between the descriptive and the designating of origin use of competing words.

(4) Where a word, although not of common speech, but what is known as a "proprietary" word, comes, because of wide advertising use, to be adopted into common speech as a word embracing not merely the product of a particular origin but every product of a like kind, so that to give a monopoly of the word as a word of designation would give a monopoly of all production. Here again care is exercised to distinguish between the particular meaning which the word had before its adoption into common speech and the general meaning afterwards attached to it.

(5) There is still a fifth class nearly akin to the third, where a product of a particular origin is given a name which is a descriptive word of common speech, but which, because of the merits of that make, becomes associated in the minds of the purchasing public with a product possessed of desirable qualities, and hence is, due to its trade reputation, in large demand.

It is to this fifth class that the valve of the plaintiff belongs. Its make came to be known as the "Everlasting valve" one of the "talking points" of which was the "straight through blow" feature which it possessed. The word "everlasting" was likewise descriptive of its claimed durability, and it was sold on a two-year warranty of effectiveness. It had gained for itself a reputation for the possession of these good features among its other merits. The defendant must find his purchasers among those to whom the plaintiff had already successfully appealed. To break into the trade, the defendant must make as strong or a stronger appeal than that of the plaintiff. He accordingly claimed as a special merit that the construction of his make of valve was such as that, when closed, it was always tight, and to emphasize this feature he gave it the name of "Evertight." He further claimed greater merit in the straight through blow feature, to which he directed attention by a cut so closely resembling that in use by the plaintiff that the finding is justified that the one was suggested by the other, and he adopted the plaintiff's slogan of "straight through blow" by adding "as through a pipe." These added words had the significance of a refer-

ence to the defendant's special construction.

There are four fact findings which have a bearing upon the conclusion reached, and which are now made:

(1) The trade is one with those who have an expert knowledge of valves and upon whom acts of deceit could not be successfully practiced, and our finding is that none of them were in fact deceived.

(2) The defendant's make of valve was always conspicuously marked with his name as the maker, and the defendant never in fact imposed his make upon purchasers as the make of the plaintiff.

(3) There is no likeness between the two makes of valves in their internal construction, but there is a similarity in outside form and general appearance which might be deceptive if the valves did not bear the name of the maker and the purchasers were not experts. There is no evidence that any purchaser bought the valves of the defendant in mistake for those of the plaintiff.

(4) The finding that the defendant has been guilty of unfair competition is not made.

The decided cases to which we have been referred are too numerous for listing, but none of them, to which we have had access, are in conflict with the conclusion reached. Among those cited are Proctor & Gamble v. Glove (C. C. A.) 92 F. 357; Ludlow v. Pittsburgh (C. C. A.) 166 F. 26; Morgan v. Ward (C. C. A.) 152 F. 690; Wesson v. Galef (D. C.) 286 F. 620; Standard v. Trinidad, 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536; Richmond v. Dr. Miles (C. C. A.) 16 F.(2d) 598.

### Conclusion of Law.

1. The bill should be dismissed, with costs to the defendant.

No decree is now made, but the parties have leave to submit one in accordance herewith.