## SMITH v. McLANE et al.

### No. 9627.

United States Court of Appeals
Third Circuit.

Argued Jan. 17, 1949.

Decided April 13, 1949.

Rehearing Denied May 3, 1949.

820

Martin A. Schenck, Kenneth W. Greenawalt, New York City (Davies, Hardy, Schenck & Soons, New York City, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Cletus G. Roetzel, Akron, Ohio, on the brief), for appellant.

William H. Eckert, Pittsburgh, Pa., for appellee.

Emory R. Kyle, Smith, Buchanan & Ingersoll, Pittsburgh, Pa., on the brief, for appellees other than Peoples City Bank.

Ralph J. McAllister, McAllister & McAllister, McKeesport, Pa., on the brief, for Peoples City Bank, appellee.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Plaintiff appeals from a judgment denying specific performance of an alleged oral agreement under the terms of which plaintiff and one McLane (his uncle and one of the defendants) presumably promised to offer and sell to one another one-half of all the shares, which either of them might thereafter acquire in the Sun Rubber Company ("Sun"), a corporation of which they were officers.[1] The opinions of the court below are reported at D.C.W.D.Pa.1947, 73 F.Supp. 849, and D.C.W.D.Pa.1948, 75 F. Supp. 219.

Jurisdiction is based upon diversity. While the record before us is copious, the issue presented is narrow. We hold that the decision of the lower court was not clearly erroneous.

The following seems to us a fair statement of the relevant facts: This is a family dispute. Differences between plaintiff and McLane led the former, in 1937, to seek affiliation elsewhere, at a time when the company needed the extension of credit and when such credit might have been obstructed because of the dissension. Coincidentally or as a result of that situation, plaintiff and McLane met in Akron, Ohio, and discussed their business relationship. On the same day in McKeesport, Pennsylvania, in consequence of that meeting, two agreements were reduced to writing; one had the effect of substantially equalizing as of that date the Sun stock holdings of plaintiff and his family on the one hand and McLane and his family on the other, and the second was a representation by McLane promising his support of the advancement of plaintiff in the Sun hierarchy. The principal factual question between the parties is whether or not the two writings incorporate everything to which they agreed in Akron. Plaintiff insists, and defendants deny, that plaintiff and McLane committed themselves to maintaining their equality in Sun stock holdings—which status plaintiff designates as "parity"—as long as the trust identified in footnote 1, supra, continued. If so, plaintiff asserts that he is entitled to buy from McLane

---

[1] The agreement, according to plaintiff, was to continue in effect for the duration of a trust concerning which a written instrument was executed in 1935.

Plaintiff also sought in the court below (a) an accounting of the trust and (b) the return of 6 shares of Sun Rubber Company stock. The former, to which defendants agreed, is in process; the latter claim failed for lack of evidence. Neither is in issue before us.

one-half of the more than 400 shares which McLane thereafter acquired.

The only persons present at the meeting when they allegedly agreed orally to preserve equality of family holdings in the future were plaintiff and McLane. Both took the stand and gave hopelessly conflicting versions of the attitude of the participants, and the purpose and fruits of the conference. Each introduced testimony tending to corroborate his view of the facts and to discredit that of his adversary. Accordingly, the trial judge, confronted with the necessity of deciding which witnesses to believe, found that no such agreement was made.

█ It is hornbook law that an appellate tribunal in a civil suit will not redetermine the credibility of witnesses when, as here, the trial judge has had the opportunity to observe the demeanor of the key witnesses upon the stand and has reached a conclusion amply supported by evidence adduced at the trial. The following are but a few of the facts, most of them stressed at the trial, which are in conformance with the finding of the court below: (1) Plaintiff concedes that he acquired 50 shares of Sun stock in 1943 but did not offer to sell half of them to McLane until two days before the instant complaint was filed in 1946; (2) plaintiff admitted that he learned of several acquisitions by McLane but made no demand to purchase half of them for many months thereafter; (3) plaintiff and McLane did put in writing agreements reached at the same conference as the alleged "parity" agreement was made, and, except for plaintiff himself, those present at the preparation of the documents (including an admittedly reputable member of the bar) testified that plaintiff "wanted everything that had been agreed to that day put down in writing so there would be no misunderstanding or argument in the future" and that plaintiff, McLane, and the brother of McLane said the two documents were "everything they agreed to that day"; (4) the recital of plaintiff concerning the trips and places visited on the day the documents were prepared was not only inherently improbable but also inconsistent with the testimony of more than one truly disinterested witness; and (5) plaintiff himself taxed credulity in insisting that he remembered verbatim what had been said in the lengthy Akron conversation ten years before. In view of these facts, we are hardly prepared to designate as clearly erroneous the refusal of the district judge to attach greater credibility to the version related by plaintiff than that presented by McLane.

█ Plaintiff attempts to forestall the usual rules as to burden of proof and scope of appellate review by asserting that he was beneficiary of a trust which McLane, as trustee, had violated; and that because of the fiduciary relationship the lower court should have stirred itself to assure that McLane made some fair agreement to purge his violations, the burden of proving the fairness being on the trustee. If we assume arguendo, however, that McLane had misapplied the trust funds—as to which there is no finding by the lower court and the record is somewhat confusing—we believe plaintiff is in no position to come into equity and seek specific performance of the agreement; for if, as plaintiff contends, the purported agreement to equalize family Sun stock holdings and to maintain such equality in the future was a compromise agreement by which Smith and McLane sought to eliminate the liability of McLane for malfeasance as a trustee, plaintiff assuredly likewise committed a breach against the other beneficiaries of the trust. We know of no legal principle authorizing one of a defrauded group of beneficiaries, in return for his granting immunity to the trustee, to effect a private settlement with the errant trustee, wherein that beneficiary could obtain for himself a larger share than that to which he was proportionately entitled, and then seek the aid of a court of equity to enforce such a contract on the grounds that the trustee had violated his trust. Certainly a court of equity will not overlook the "clean hands" doctrine and grant specific performance of such an agreement if the trustee thereafter fails to perform his part of the bargain. Plaintiff, therefore, is in a position where he cannot invoke the aid of a court in equity as a defrauded beneficiary, in that he too would then have been guilty of participating in the fraud, Re-

statement, Contracts, 1932 ed. § 368; nor can he prevail here under any theory, in view of the specific finding that no such agreement was made.

■ Without determining, therefore, other questions pertinent to the equitable relief here requested, such as whether or not the alleged agreement falls afoul of the applicable Statute of Frauds and parol evidence rule; or, even if it was made, whether it was sufficiently definite and appropriate subject-matter for specific performance; or whether plaintiff would be barred by laches and his own failure to offer half of the stock he acquired more expeditiously, we must conclude that the critical finding of fact by the district judge, amply supported by credible evidence, is dispositive of this appeal. The judgment will accordingly be affirmed.