**DRESSER INDUSTRIES, INC.,**
a Corporation

v.

**HERAEUS ENGELHARD VACUUM,**
**INC., a Corporation.**

Nos. 16566, 16567.

United States Court of Appeals
Third Circuit.

Argued Dec. 4, 1967.

Decided May 24, 1968.

"A Yes."

Jerome Gilson, Hume, Clement, Hume & Lee, Chicago, Ill. (Dean A. Olds, Melvin F. Jager, Chicago, Ill., Walter T. McGough, J. Sherman McLaughlin, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Robert W. Mayer, Dallas, Tex., of counsel, on the brief), for appellant in No. 16566 and for appellee in No. 16567.

Ralph Dinklage, Burgess, Dinklage & Sprung, New York City (Christy, Parmelee & Strickland, Pittsburgh, Pa., on the brief), for appellant in No. 16567 and for appellee in No. 16566.

Before MARIS, KALODNER and SEITZ, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

These are appeals from a judgment entered in the District Court for the Western District of Pennsylvania in an action brought by the plaintiff, Dresser Industries, Inc., a corporation engaged in the manufacture and sale of, inter alia, rotary positive displacement lobe-type vacuum pumps, blowers and compressors, to enjoin the defendant, Heraeus Englehard Vacuum, Inc., a corporation selling similar products manufactured in Hanau, Germany, by the defendant's parent corporation, W. C. Heraeus, GmbH, from using the trademark "Roots" in catalogues and trade journal advertising in the United States. Judge Willson, in a careful and exhaustive opinion, set out the charges and countercharges of the pleadings, as well as the corporate history of the parties, and the history of the 1860 [1] patent issued to P. H. Roots on an improvement in rotary blowers, and made comprehensive findings covering the

---

1. Letters Patent No. 30157 issued under date of September 25, 1860, and reissued under date of October 2, 1866, Reissue No. 2369, and the designs of the rotary blower are set out in Appendix A to the opinion of the district court, 267 F. Supp. pp. 976–984.

factual issues. No useful purpose would be served in repeating here what has been so well and fully stated by him. Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., D.C.Pa.1967, 267 F.Supp. 963.

For this review it is sufficient to say that the design disclosed in the P. H. Roots 1860–1866 patent generated considerable interest in engineering and industrial circles, abroad as well as in this country, winning high awards in exhibitions held in 1867, 1873 and 1876. That design principle has retained its appeal to the present time. Since 1859 rotary air blowers and related products were manufactured and sold by the plaintiff's predecessors, P. H. & F. M. Roots Company and succeeding predecessors in interest, and are now manufactured and sold by the plaintiff through its Roots-Connersville division. In 1955 Heraeus began to sell through a distributor in the United States its rotary positive displacement pumps. In 1963 the defendant was formed to sell these products. During this period the plaintiff protested, to Heraeus' agent and later to the defendant, the use of the word "Roots" in advertising "Roots pumps", "Roots blowers" and "Heraeus Roots Pump".[2]

The goods with which the parties compete in the market in this country are rotary positive displacement lobe-type vacuum pumps. At least half a dozen major companies manufacture and sell this type pump. The defendant's products range in price from about $1,-300 to $25,000 and up; competitive bidding accounts for a good percentage of the purchases from the parties. The pumps are often sold as a result of an inquiry or a direct order from a prospective user. The market is relatively small and selective, the purchasing being made sometimes through customers' purchasing agents but, generally, on the basis of specifications drafted by the customers' engineers for use in installations which are large and expensive. In these sales advertising may play a significant role and the descriptive words used are often of paramount importance. Invitations to bid indicated that the prospective purchasers, among whom were the National Bureau of Standards, the United States Air Force, Grumman Aircraft Engineering Corporation and the General Electric Company, specified "Roots-type", "Roots", "roots", or "Roots type" pumps. In this context it was of considerable importance to the plaintiff, on the one hand, to restrict the use of the word "Roots" to its own products, and to the defendant, on the other, to be free to use the word "Roots" with respect to advertising its products.

The complaint charged that the use by the defendant of the trademark "Roots" being identical to the plaintiff's trademark "Roots" and substantially identical to salient portions of the plaintiff's five other trademarks,[3] wrongfully identified and represented the defendant's pumps as originating from the plaintiff and was likely to cause confusion, deception or mistake in the minds of the purchasing public as to the origin or relationship of the defendant's products, in violation of section 32 of the Trademark Act of 1946, as amended, 15 U.S.C.A. § 1114(1), and constituted unfair competition for which plaintiff demanded an accounting and damages. The defendant by way of defense asserted that the designation "Roots", since at least 1900, has been in the public domain, widely used in the art to identify either an engineering principle or a type of equipment embodying that principle, and has become generic with respect to identifying that type of equipment. In a counterclaim the defendant charged the plaintiff with fraud in obtaining its trademark registrations and with unfair competition and illegal restraint and sought a judgment dismissing the complaint, cancelling the

---

2. The words "Roots" was not affixed to any of the defendant's products sold in this country or to the wrappings.

3. The plaintiff's registered trademarks are set out in Appendix B to the opinion of the district court. 267 F.Supp. p. 984.

plaintiff's trademark registrations, and damages.

Following the trial of the case, the district court concluded that the word "Roots", as applied to rotary positive displacement lobe-type pumps, blowers and compressors which embodied the design or principle disclosed in Patent Reissue No. 2369, was a word of generic significance; that the plaintiff did not have any rights of trademark or tradename in the word per se; that the word "Roots" was free for use in the trade by the defendant in its sales promotion, providing the defendant in using the word "Roots" did so in such a manner as to show that its goods were the products of a specific supplier other than plaintiff's Roots-Connersville division. The court accordingly dismissed the complaint. With respect to the defendant's counterclaim, the court ordered cancellation of the plaintiff's Trademark Registration Nos. 153,840 and 710,549, insofar as they related to rotary positive displacement lobe-type pumps, blowers and compressors, dismissed the remainder of the counterclaim and awarded the defendant costs of the action. Judgment was entered accordingly and these appeals followed. The plaintiff, at our docket No. 16566, appeals from all portions of the judgment excepting that portion dismissing the remainder of the counterclaim; the defendant, at our docket No. 16567, appeals from that portion of the judgment dismissing its counterclaim.

■■ In deciding cases involving charges that the exclusive use of a trademark has been invaded, there is no precise formula or rule of law which can be applied mechanically to determine whether there has been an infringement of a trademark or name. Each case must be decided on its own facts and circumstances. Morgenstern Chemical Co. v. G. D. Searle & Co., 3 Cir. 1958, 253 F.2d 390, 392. As was observed in Q-Tips, Inc. v. Johnson & Johnson, 3 Cir. 1953, 206 F.2d 144, 145, "when the final outcome on a given set of facts may vary, not with the legal concepts involved, but their application to particular states of fact, the pattern is inevitably less clear than in cases where a definite rule is to be applied." How a particular word has been used and how it has been understood by the public or the trade is a question of fact. Telechron, Inc. v. Telicon Corp., 3 Cir. 1952, 198 F.2d 903, 907.

■■ The function of a trademark is to identify the origin or ownership of the article; the essence of the wrong is the passing off of the goods of one manufacturer or vendor as those of another. Delaware & Hudson Canal Company v. Clark, 1871, 13 Wall. 311, 322, 80 U.S. 311, 322, 20 L.Ed. 581; In re Trade-Mark Cases, 1879, 100 U.S. 82, 92, 25 L.Ed. 550; G. & C. Merriam Co. v. Saalfield, 6 Cir. 1912, 198 F. 369, 372; Restatement, Torts, §§ 711, 712. The right of the plaintiff must be based upon a wrong which the defendant has done to it by misleading customers as to the origin of the goods sold thus taking away its trade. Such a right is not founded on a bare title to a word or symbol but on a cause of action to prevent deception. Dupont Cellophane Co. v. Waxed Products Co., 2 Cir. 1936, 85 F.2d 75, 81. In this respect, the common law of trademarks is but a part of the broader law of unfair competition. Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 412–413, 36 S.Ct. 357, 60 L.Ed. 713.

■ This court in Gum, Inc. v. Gumakers of America, 1943, 136 F.2d 957, 958, observed: "Aside from the prohibition against infringing a patent, copyright or trade mark and except for the requirement * * * that he must identify his product as his own, any one has the right to manufacture and sell a product similar or even identical in appearance to the original product with which it competes unless the original product has become associated in the public mind with its producer." That a surname, by virtue of actual and exclusive use, may be registered as a trademark is clear. Trade-Mark Act of 1946, § 2, 15 U.S.C.A. § 1052; Restatement, Torts, § 716; Thaddeus Davids Co. v. Davids, 1914, 233 U.S. 461, 468, 34 S.Ct. 648, 58 L.Ed. 1046. But where during

the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become by his consent, either express or tacit, the identifying and generic name of the thing patented, the name passed to the public with the cessation of the monopoly which the patent created subject to the duty imposed upon the one using the patent and the name not to pass his goods off as the goods of the originator. Singer Manufacturing Co. v. June Manufacturing Co., 1896, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Restatement, Torts, §§ 721, 727, 735. To that end, the law has required that the article be so marked with the maker's name or otherwise as to prevent confusion or deception. Yale & Towne Mfg. Co. v. Ford, 3 Cir. 1913, 203 F. 707, 709–710. However, whether a name has come to indicate the invention and constitutes its generic description is one of fact, to be proved by the evidence. President Suspender Co. v. MacWilliam, 2 Cir. 1916, 238 F. 159, 163; Ross-Whitney Corp. v. Smith Kline & French Lab., 9 Cir. 1953, 207 F.2d 190, 194–195.

■ It has been said that the law is not made for the protection of experts but for the public—that vast multitude, which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze but are governed by appearances and general impressions. Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir. 1910, 178 F. 73, 75; J. N. Collins Co. v. F. M. Paist Co., D.C. Pa.1926, 14 F.2d 614, 615–616; Baker v. Master Printers Union of New Jersey, D.C.N.J.1940, 34 F.Supp. 808, 810–811; Stork Restaurant v. Sahati, 9 Cir. 1948, 166 F.2d 348, 359; Plough, Inc. v. Kreis Laboratories, 9 Cir. 1963, 314 F.2d 635, 645; 3 Callmann, Unfair Competition and Trade-Marks, 2d ed. § 81.2. This is not to say that trademark rights of manufacturers or vendors selling to experts are unprotected but the general principles of law are applied in the light of the character of the article, the use to which it is put, the manner in which it is

purchased, and the kind of people who ask for it. Whether the class of buyers is sophisticated is a matter of importance in deciding the question of probable confusion. Pyle Nat. Co. v. Oliver Electric Mfg. Co., 8 Cir. 1922, 281 F. 632, 635; Everlasting Valve Co. v. Schiller, D.C.Pa. 1927, 21 F.2d 641, 643. But the mere fact that those ordering a product may be discriminating technicians does not of itself insure against the likelihood of confusion; being skilled in one's own art will not necessarily preclude confusion if the similarity between the marks is too great. Compare, Bayer Co. v. United Drug Co., D.C.N.Y.1921, 272 F. 505 (defendant enjoined from using the trademark "Aspirin" in sales to chemists, physicians or retail druggists but allowed to sell under that name direct to consumers because as to them the word meant the article and not the source of manufacture); Morgenstern Chemical Co. v. G. D. Searle & Co., 3 Cir. 1958, 253 F.2d 390 (Mictine dispensed only on physicians' prescriptions was confusingly similar to Micturin which was also dispensed on physicians' prescriptions but was for an entirely different ailment); Wincharger Corporation v. Rinco, Inc., 1962, 297 F.2d 261, 49 CCPA 849 (power supply equipment); Marks v. Polaroid Corporation, D.C.Mass.1955, 129 F.Supp. 243, 273, aff. 1 Cir., 237 F.2d 428 (sale to motion picture distributors). As a basis for any relief, the plaintiff must prove that the buying public is likely to confuse the goods of the plaintiff and defendant, which is a question of fact for the district court to decide. John R. Thompson Co. v. Holloway, 5 Cir. 1966, 366 F.2d 108, 113.

With these principles in mind we turn to the plaintiff's contentions on its appeal. Many points are raised and argued at length but these boil down to purely questions of fact. The first issue raised by the pleadings was whether the plaintiff had a trademark for which it was entitled to legal protection in the use of the name "Roots" to designate its pumps, blowers and compressors incorporating the principle disclosed in Roots' Patent

No. 2369. This the district court answered in the negative. The second issue raised was whether the use of "Roots" by the defendant in advertising Heraeus' pumps operated as a palming off of the defendant's goods as those of the plaintiff or was likely to cause confusion in the minds of the consuming public. This was also answered in the negative.

■■■ The plaintiff says that the finding of the district court that "Roots" was generic is clearly erroneous, that the district court erred in failing to find that the defendant's use of "Roots" was likely to cause confusion, deception and mistake, and that the plaintiff's witnesses unequivocally showed that "Roots" is regarded as a trademark, thereby establishing a secondary meaning for that term. The chief attack by the plaintiff on these findings is as to the weight which the trial judge gave to the defendant's expert and documentary evidence. The plaintiff contends that the trial judge should have given more weight to the plaintiff's witnesses and experts as to the meaning of the word "Roots" to the purchasing public and should have answered this question and the question of the likelihood of confusion in the way testified to by those witnesses. The evidence was sharply contradictory and the trial judge did give controlling significance to the defendant's evidence. It is settled law, however, that the question of credibility is peculiarly for the trier of fact. An appellate tribunal will not redetermine the credibility of witnesses where, as here, the trial judge had the opportunity to observe their demeanor and to form a conclusion. Rule 52(a) Federal Rules of Civil Procedure; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 274–275, 69 S.Ct. 535, 93 L.Ed. 672; Smith v. McLane, 3 Cir. 1949, 174 F.2d 819, 821; Q-Tips, Inc. v. Johnson & Johnson, 3 Cir. 1953, 206 F.2d 144, 147; Marks v. Polaroid Corporation, 1 Cir. 1956, 237 F.2d 428, 435. Upon a careful review of the record we are constrained to conclude that the findings of the district court are amply supported by the evidence.

With the controversy as to these issues of fact thus resolved, the matter should be ended insofar as plaintiff's appeal is concerned. But the plaintiff contends that the district court erred as a matter of law. To these contentions, therefore, we now turn.

The plaintiff says that the district court erred as a matter of law in its application of the Singer decision to the present facts and that the court misapplied the test of the Bayer Co. case. In this regard the district court stated:

> "Where, during the life of a patent, a name, whether it be arbitrary or that of the inventor, has become the identifying and generic name of the thing patented, this name passes to the public with the expiration of the patent. Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118. However, the mere expiration of the patent covering the thing patented does not cause the name of the thing to pass, along with the teaching of the patent, into the public domain. The test is whether the name of the patented thing has become generic, that is, whether the name of the patented thing has come to mean primarily what kind of thing it is, rather than that it comes from a single source. The test for deciding whether a name has become a generic title of a product is 'What do the buyers understand by the word for whose use the parties are contending?' Bayer Co. v. United Drug Co., D.C. N.Y., 272 F. 505." 267 F.Supp. page 969.

■■■ The plaintiff's main argument is that it is crucial to the application of the Singer decision that genericness be proved to exist during the life of the monopoly created by the patent, which in this case would be for the period ending in 1874, and that the documentary evidence introduced by the defendant bearing publication dates preceding 1874 failed to prove that the name had acquired a generic meaning during the life of the Roots patent. The weight to be given the evidence of this nature in

the case was for the district court and its findings adequately answer the question of fact raised by the plaintiff whether "Roots" had become of generic significance during the term of the patent. Regardless of this, however, the narrow construction which the plaintiff seeks to place upon the rule laid down in the Singer decision cannot be accepted. Under the particular facts of that case, the Supreme Court decided that the Singer name had become generic as a description of the product patented during the term of the patent and hence the name passed to the public with the expiration of the patent. But we do not read the Singer decision to hold that only because the Singer name had become generic before the expiration of the term of the patent did the name pass into the public domain. The theory underlying the Singer doctrine is stated in the Restatement of Torts, § 735(1), thus: "A designation which is initially a trade-mark or trade name ceases to be such when it comes to be generally understood as a generic or descriptive designation for the type of goods, services or business in connection with which it is used." Comment b thereto further states: "It is not by the expiration of the patent or secret, but by the change of meaning in the market, that such a designation ceases to be a trade-mark under the rule stated in this Section." The nub of the issue is whether a name still indicates exclusively the source or origin of manufacture of goods, not when, in point of time, a designation comes to be generally understood as generic or descriptive. Accordingly, we conclude that whether "Roots" became a generic designation during the term of the patent or thereafter does not affect the application of the rule of the Singer decision to the facts of this case. It is the ultimate fact which is decisive—namely, that it has in fact become a generic designation.

The Singer decision is likewise said to be inapplicable to this case for the reason that the district court found that through the years the product line of Roots-Connersville has been greatly expanded so that it now manufactures all sorts of air and gas handling equipment —pumps, blowers and exhausters based on various engineering principles, as well as gas meters, and accessories—and is now developing electronic instruments. The plaintiff says this case is governed by the rule stated in Enders Razor Co. v. Christy Co., 6 Cir. 1936, 85 F.2d 195, and Telechron, Inc. v. Telicon Corp., D.C.Del. 1951, 97 F.Supp. 131, aff'd. 3 Cir. 1952, 198 F.2d 903, that an arbitrary term applied to an extensive line of products cannot be generic, and that the district court erred in refusing to follow this well established exception to Singer. Judge Willson carefully analyzed those cases, and finding that while language contained therein was favorable to the plaintiff's contention, he concluded that the present case is distinguishable on its facts and he adhered to his finding that, upon the evidence in this case, "Roots" is a word of generic significance which is descriptive of a type of vacuum pump and its underlying principle. We are wholly in accord with this conclusion.

The plaintiff further charges that the district court overlooked the pre-patent use by plaintiff's predecessors of the trade name "Roots" as "Roots Woolen Mills" which preceded the granting of the 1860 patent. We cannot see how this established any special property right in the plaintiff. It has been said that a trademark is not property in the ordinary sense but only a word or symbol indicating the origin of a commercial product. The owner of the mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. There are no rights in a trademark beyond these. It cannot be assigned in gross and may only be transferred with a business to identify the merchandise of the owner. Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir. 1937, 92 F.2d 33, 35; Looz, Inc. v. Ormont, D.C.Cal.1953, 114 F.Supp. 211, 215. The facts of this case are dis-

tinguishable from those of the cases in which a trademark or name on a product antedated the granting of the patent and where it was the name and not the patent which gave particular value to the article. Batcheller v. Thomson, 2 Cir. 1899, 93 F. 660, 665; President Suspender Co. v. MacWilliam, 2 Cir. 1916, 238 F. 159, 163. Certainly the trade name "Roots" designating woolens lent no value to plaintiff's pumps and does not affect the application of Singer to the facts of this case.

The plaintiff also contends that the Singer decision is inapplicable where a patent covers only an improvement on a product previously known for more than 200 years. That pumps were known and long in use is indisputable but it does not appear that the specific teaching disclosed in the Roots patent, the meshing of the pump lobes in a more airtight fashion, was known or used before the time of issue of the Roots patent. It was this particular design which the district court found was of such great interest in engineering and industrial circles and which became known as the "Roots principle". The defendant contends that a somewhat similar claim was made in the case of Dupont Cellophane Co. v. Waxed Products Co., 2 Cir. 1936, 85 F.2d 75, 81, and rejected by the court which stated, "Certainly to some extent at least his patents 'afforded shelter against the competition of others' and brought the case within the Singer decision. Horlick's Food Co. v. Elgin Milkine Co., 120 F. 264, 266 (C.C.A. 7)." We conclude there is no merit in this contention of the plaintiff.

And, finally, the plaintiff says the Singer decision is outmoded and of sharply limited application. We cannot agree. The cases upon which the plaintiff relies to support this contention are distinguishable on their facts and merely apply the rule of the Singer decision that one may not mislead purchasers into believing they are buying Singer machines and may not palm off his goods as those of the Singer Company. Singer Mfg. Co.

v. Briley, 5 Cir. 1953, 207 F.2d 519; Singer Mfg. Co. v. Redlich, D.C.Cal.1952, 109 F.Supp. 623. We conclude that the district court did not misapply the Singer decision in this case.

The plaintiff next charges that the district court erroneously departed from the established test for genericness stated in the Bayer case, namely: "What do buyers understand by the word for whose use the parties are contending" by adding thereto the phrase "when the word is used in association with one particular product", thereby in effect extending the Singer doctrine by making it applicable to a single product out of a multiple line of products with respect to which the alleged generic term is used. The plaintiff says that in doing so the district court disregarded plaintiff's documentary and oral evidence of decades of multi-product advertising and sales. The plaintiff is here in effect again presenting the argument that since the trademark "Roots" is used on a variety of different products the word "Roots" cannot become generic as to a type of vacuum pump alone. In this case the district court found that the relevant market shared by the parties was rotary positive displacement lobe-type pumps incorporating the design disclosed in the Roots 1860 patent and that it was only as to pumps incorporating this design that the word had become generic. As we have indicated the court considered the plaintiff's argument in the light of the Telechron and Enders decisions and properly held that they did not rule this case. We have no quarrel with the holding of those cases that an arbitrary name can hardly become generic as applied to all of a wide variety of products of a manufacturer. But this is not to say that such a name may not become generic as to one of those products. Indeed, as Judge Willson found from ample evidence, this is exactly what has happened here. And the fact that the plaintiff's "Roots" pumps include a variety of individual types is not significant in this connection. For, as the court said in the Enders case "the same name as a generic de-

scription may apply to various species within the same genus." 85 F.2d 195, 197.

The plaintiff further contends that the district court misapplied the Bayer test in considering the question of the likelihood of confusion for the reason that all of the plaintiff's products are so closely allied that the record does not support a finding of the isolation of "pumps, blowers, compressors, or the like, incorporating the design or principle referred to in Patent No. 2369" from the spectrum of purchasers in the air and gas handling field. The fallacy of this argument is that it does not meet an important finding of fact supported by the evidence in this case, namely, that these products are not offered to a spectrum of purchasers but to a relatively small and selective market, each purchase being made with reflection and without haste. We conclude that the district court properly applied the test of the Bayer case.

This brings us to the defendant's cross-appeal and its contention that the district court erred in dismissing that part of its counterclaim seeking damages and attorney's fees. The defendant contends that it proved that the plaintiff had fraudulently obtained trademark registrations well knowing that the word "Roots" was generic and in the public domain and that, therefore, the plaintiff used these trademark rights to exclude the defendant from the market through threats of litigation. The defendant argues that it had established a prima facie case within the meaning of Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 1965, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 and Kobe, Inc. v. Dempsey Pump Co., 10 Cir. 1952, 198 F.2d 416, and was entitled to damages arising from plaintiff's alleged fraudulent registration of trademarks, Trade-Mark Act of 1946, § 38, 15 U.S. C.A. § 1120, and to an award of treble damages, under section 4 of the Clayton Act, 15 U.S.C.A. § 15, for injuries sustained from plaintiff's alleged interference with trade. No useful purpose would be served in repeating what has

been so thoroughly considered and well stated by Judge Willson in rejecting these contentions on the ground that the evidence did not support the defendant's claims. 267 F.Supp., pp. 975–976. These are findings of fact which will not be disturbed on appeal.

The judgment of the district court will be in all respects affirmed.