Samuel **FREEDMAN** et al.,

v.

**PHILADELPHIA TERMINALS AUC-TION CO.**, a New Jersey Corporation.

**Civ.A. No. 19847.**

United States District Court
E. D. Pennsylvania.
Oct. 30, 1956.

---

Leon H. Kline, Philadelphia, Pa., for plaintiff.

T. Ewing Montgomery, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case, currently before the court on defendant's Motion to Dismiss under Rule 12(b), Fed.Rules Civ.Proc. 28 U.S. C.A., involves a suit by plaintiffs, members of an unincorporated association of Philadelphia wholesale fruit merchants, against defendant, a New Jersey corporation engaged in the business of auctioning such fruit in Philadelphia. The complaint is founded on certain provisions of the federal anti-trust laws and also on general provisions of the law of fraudulent misrepresentation and resti-

tution as they relate to business transactions, particularly where there is business coercion.

■■ Under the provisions of Rule 12(b), all well pleaded facts averred in the complaint must be taken as admitted for the purposes of the disposition of defendant's motion.[1] In addition, an affidavit and depositions with exhibits have been filed by the parties, and will also be considered by the court in the decision of the matter at hand.[2] The complaint in this action is divided into three "Counts," which will be considered separately.

### Count I

Count I alleges certain violations by the defendant of Sections 1 and 2 of the Sherman Anti-Trust Act[3] and of the Robinson-Patman Act's amendment to Section 2 of the Clayton Anti-Trust Act.[4] Factually, this count alleges that plaintiffs' members purchase fruit coming to Philadelphia from other states through defendant; that the defendant is engaged in the fruit auction business in Philadelphia and handles fruit coming from other states;[5] that defendant handles almost all fresh fruit coming to the Philadelphia market, which includes areas in Pennsylvania, New Jersey and Delaware,[6] in less than carload lots; that these sales are made by defendant by arrangement with the growers, shippers and consignees of said fruit; and that defendant is paid a commission by these sellers for its services[7] (Complaint, paragraphs 1 through 3).

■ The fruit allegedly comes from all over the United States to a point of distribution in Philadelphia and the depositions show that it passes through the facilities of the defendant to several states on the eastern seaboard (D. 63 ff.). The defendant's operation, if as asserted, is an important link in a chain of commerce. Thus, under the notice type pleading prevailing in federal practice, these paragraphs of the complaint contain satisfactory allegations of the interstate character of the defendant's business.[8]

1. United States v. Geisler, 7 Cir., 1949, 174 F.2d 992.

2. F.R.Civ.P. rule 12(b) provides, inter alia: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
See, also, Lane Bryant, Inc., v. Maternity Lane, Ltd., 9 Cir., 1949, 173 F.2d 559.

3. Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, provides:
"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: * * *."
Section 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 2, provides:
"§ 2. *Monopolizing trade a misdemeanor; penalty*
"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *."

4. 15 U.S.C.A. § 13(c) provides: "*Payment or Acceptance of Commission, Brokerage, or Other Compensation*
"(c) It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

5. Deposition, pp. 18–25 (hereinafter designated as "D. 18–25").

6. D. 62–63.

7. D. 97–98.

8. See United States v. Employing Plasterers Ass'n, 1954, 347 U.S. 186, 74 S.Ct.

Also, the record indicates that defendant, without the consent of plaintiffs, levied against, and accepted from, the plaintiffs as buyers a separate charge[9]; that defendant rendered no services to plaintiffs, but, on the contrary, rendered all its services to the growers, shippers and consignees for whom it sold (Complaint, paragraph 4).

These allegations, if true, constitute a violation of the Robinson-Patman amendment to Section 2 of the Clayton Anti-Trust Act,[10] since they show that the defendant is not performing its services for the plaintiffs as buyers at auction.

The complaint continues that defendant sells, by arrangements with growers, shippers and consignees,[11] substantially all fresh fruit arriving in Philadelphia by rail in less than carload lots;

that by virtue of this fact, defendant controlled the free flow of commerce in such fruits, monopolized the market,[12] and was thus enabled to exact the aforementioned separate charge from plaintiffs; that such conduct contravened Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 & 2; and that, by virtue of such conduct, plaintiffs sustained substantial damage.

The record now before the court makes it appear most unlikely that there has been any violation of 15 U.S.C.A. §§ 1 & 2. Cf., for example, Standard Oil Co. v. F. T. C., 1951, 340 U.S. 231, 248–249, 71 S.Ct. 240, 95 L.Ed. 239; Lawlor v. National Screen Corp., 3 Cir., 238 F.2d 59. However, the plaintiffs are entitled to go to trial on the alleged violation of 15 U.S.C.A. § 13(c), so that Count I may not be dismissed at this

452, 98 L.Ed. 618. But cf. Hopkins v. United States, 1898, 171 U.S. 578, 592, 595–596, 598, 19 S.Ct. 40, 46, 43 L.Ed. 290, where the court said:
"It is possible that exorbitant charges for the use of these facilities might have similar effect as a burden on commerce that a charge upon commerce itself might have. In a case like that the remedy would probably be forthcoming."

9. D. 96–106; Exhibits P–1 and P–2; and second paragraph starting on page 7 of defendant's affidavit filed 1/20/56, stating that a terminal charge is imposed on the buyer. (The fact that part of this terminal charge is paid to the railroad for unloading, pursuant to I. C. C. order, does not necessarily mean the buyer should bear this expense and, further, the record does not show whether or not the balance of the charge is limited to defendant's cost of collection.)

10. See 15 U.S.C.A. § 13(c), quoted in footnote 4 above. Exhibit P–19 makes clear that defendant accepts compensation from buyers and sellers even though the record presently before the court indicates that its primary function is as agent for the sellers, to whom it owes its primary loyalty. See, also, Great Atlantic & Pacific Tea Co. v. F. T. C., 3 Cir., 1939, 106 F.2d 667, cf. 51 H.L.R. 1303 (1938); Quality Bakers of America v. F. T. C., 1 Cir., 1940, 114 F.2d 393, 398–399; Kentucky-Tennessee

Light & Power Co. v. Nashville Coal Co., D.C.W.D.Ky.1941, 37 F.Supp. 728, 734–735, affirmed Fitch v. Kentucky-Tennessee Light & Power Co., 6 Cir., 1943, 136 F.2d 12, 149 A.L.R. 657–677 (1944), and cases there cited. In the Great Atlantic & Pacific Tea Co. case, the court said, 106 F.2d at pages 674–675:
"The phrase 'except for services rendered' is employed by Congress to indicate that if there be compensation to an agent it must be for bona fide brokerage, viz., for actual services rendered to his principal by the agent. The agent cannot serve two masters, simultaneously rendering services in an arm's length transaction to both. While the phrase, 'for services rendered', does not prohibit payment by the seller to his broker for bona fide brokerage services, it requires that such service be rendered by the broker to the person who has engaged him. In short, a buying and selling service cannot be combined in one person."
But cf. Allgair v. Glenmore Distilleries Co., Inc., D.C.S.D.N.Y.1950, 91 F.Supp. 93, and Interborough News Co. v. Curtis Pub. Co., D.C.S.D.N.Y.1950, 10 F.R.D. 330, 332, pointing out that there must be such strong compulsion motivating the alleged improper payment by the buyers "as to amount to substantial economic coercion."

11. Supra note 5; Exhibits P–10, P–11, P–12 & P–17.

12. See D. 16.

time.[13] At the time of the pre-trial conference or at the start of the trial, a motion may be made to limit Count I to the alleged violation of 15 U.S.C.A. § 13(c) on the basis of the record then before the court.

### Count II

This count of the complaint is an action at law based on diversity of citizenship. The allegation therein contained is essentially one of fraudulent misrepresentation.[14] The plaintiffs assert that the defendant collected a terminal charge from the plaintiffs and asserted to the plaintiffs that the charge so collected was to be turned over to the railroads in payment of their unloading charges. However, plaintiffs assert that this charge was not remitted in its entirety to the railroads. Plaintiffs seek recovery of the moneys so collected and not remitted on the ground of defendant's alleged misrepresentation.

■ The complaint does not allege on what misrepresentations the plaintiffs are relying, when they were made, or whether they were oral or written.[15] F.R. Civ.P. rule 9(b) provides:

"In all averments of fraud * *, the circumstances constituting fraud * * * shall be stated with particularity."

The motion to dismiss filed by defendant will be considered as a motion for more definite statement under F.R.Civ.P. rule 12(e) and this count will be stricken unless it is amended by plaintiffs, within thirty days, to make it more definite, in compliance with F.R.Civ.P. rule 9(b).

### Count III

■ This count is based on Sections 1, 70 and 78 of the Restatement of Restitu-

tion. Plaintiffs apparently contend that the terminal charges should have been paid by defendant or the sellers at the auction and they would not have paid them if it were not for business coercion. Under the applicable decisions in this Circuit,[16] plaintiffs are entitled to an opportunity to submit proof of this count at the trial.

---

13. The Third Circuit Court of Appeals has recently emphasized that summary judgment should not be granted in cases arising under the anti-trust laws if there is "any doubt as to the existence of a genuine issue of fact". See Lawlor v. National Screen Corp., supra, 238 F.2d at page 65.

14. Plaintiffs rely on Sections 525 to 535 of the Restatement of Torts and Neuman v. Corn Exchange National Bank &

Trust Co., 1947, 356 Pa. 442, 51 A.2d 759, 52 A.2d 177.

15. For example, if plaintiffs are relying on written documents such as P–1 and P–2, defendant is entitled to know this.

16. See Lawlor v. National Screen Corp., supra, and Levy v. Equitable Life Assurance Society, D.C.E.D.Pa.1955, 18 F.R.D. 164, and cases cited in those cases.