**WURZBERG BROTHERS, INC., a corporation of the State of New Jersey, Plaintiff,**

**v.**

**HEAD SKI COMPANY, Inc., a corporation of the State of Maryland, Defendant.**

**Civ. A. No. 832–66.**

United States District Court
D. New Jersey.
Nov. 15, 1967.

Shavick, Thevos, Stern, Schotz & Steiger, by Howard Stern, Paterson, N. J., for plaintiff.

Riker, Danzig, Scherer & Brown, by Charles Danzig, Newark, N. J., Piper & Marbury, by William L. Marbury, Baltimore, Md., for defendant.

## OPINION

WORTENDYKE, District Judge:

Plaintiff, Wurzberg Brothers, Inc. (hereinafter Wurzberg), a New Jersey corporation, with its principal place of business in the City of Paterson, in that State, is engaged in the business of selling sporting goods equipment at retail. Defendant Head Ski Co., Inc. (hereinafter Head), a Delaware corporation, having its principal place of business in Maryland, is engaged in the manufacture and nationwide distribution of metal skis and ski poles.

Wurzberg invokes this Court's jurisdiction under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Section 4 of the Clayton Act (15 U.S.C. § 15). Wurzberg seeks the recovery of treble damages from Head and also injunctive relief.

The complaint alleges that the skis and ski poles manufactured by Head have gained national acceptance, and that the public demand therefor is such that sporting goods stores or ski shops which are unable to obtain Head cannot compete in the sale of metal skis or other ski products. It is charged that Head, for the purposes of eliminating competition and creating a monopoly in the sale of metal skis and ski poles, developed a franchise system whereby certain limited business entities are granted yearly franchises, terminable at the will of Head which permit a dealer to sell "Head" ski products. It is further alleged that the policy of Head under its franchise system is to (a) maintain uniform retail prices on all Head products; (b) prohibit discounts on any ski products when sold with a product manufactured or distributed by Head; (c) control the advertisement of Head and other ski products; (d) eliminate all competition between retail outlets of Head Ski products; (e) deprive the general public of discounts on ski products not manufactured by Head, when such products are sold with any

Head products; and (f) eliminate competition in the sale of Head products by limiting the number of its authorized dealers.

Wurzberg had been an authorized franchise dealer of Head prior to June 8, 1966, and as such had become a successful and profitable outlet for Head's products. During the period of the franchise, Wurzberg alhered to the retail prices suggested by Head, but refused to participate in Head's program which prohibited Wurzberg or any other store from offering discounts to the general public on any ski products when that product was sold with a product manufactured by the defendant.

The complaint charges that the Head franchise system and its program restrain interstate commerce and have "tended to and actually created a monopoly in the line of interstate commerce in this State" to the injury of the plaintiff in its business and property. Wurzberg charges that on June 8, 1966 Head terminated Wurzberg's franchise and refused to sell any Head products to Wurzberg; thereby eliminating Wurzberg's ability to compete with other sporting goods and/or ski shops in the market for metal skis controlled by Head. Wurzberg contends that, in consequence of the termination of its franchise by Head, Wurzberg lost and will continue to lose great profits and good will and has suffered destruction of its reputation in the retail distribution of ski products of all types. The foregoing allegations were thereafter repeated by incorporation by reference in the succeeding counts of the complaint, which, respectively, seek damages and other relief for the impairment of Wurzberg's ability to compete and to sell to the general public nationally known-products such as those manufactured by Head.

Head has moved this Court for summary judgment upon the asserted grounds that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. In support of the motion, movant relies upon the pleadings, various depositions on file and affidavits annexed to the motion papers. A sample, but unexecuted copy of the franchise agreement between the parties for the season 1965–1966, entitled "Statement Of Mutual Agreement Between Head Ski Co., Inc. And Authorized Head Ski Dealer", concededly executed in behalf of each of the parties to this litigation, and terminated June 8, 1966, provided in pertinent part as follows:

"This Agreement when signed by an officer or principal of the Dealer and by Howard Head, President, Head Ski Co., Inc. constitutes the establishment of the Dealer as an Authorized Head Ski Dealer, and confers on the Dealer the right to sell Head Ski Products at retail.

This Agreement shall be in effect from date of acceptance by Head Ski Co., Inc. until July 31, 1966, unless otherwise terminated as herein provided.

Dealerships may be renewed from year to year only by mutual agreement and by the execution of a new agreement form between Head Ski Co., Inc. and the Dealer.

This Agreement between Head Ski Co., Inc. and the Authorized Head Ski Dealer becomes invalid with any change of ownership or change of management of the Dealer, and may not be assigned or passed on to any other Dealer or management without the written consent of Head Ski Co., Inc.

This Agreement may be terminated without cause at any time on written notice either by Head Ski Co., Inc. or by the Authorized Head Ski Dealer.

In the event of termination of this Agreement by either party, Head Ski Co., Inc. will have the prior right, but not the obligation, to repurchase from the Dealer any Head Ski Co. products then in possession of the Dealer at the original cost to the Dealer. In the event of the Authorized Head Ski Dealer terminating, liquidating, or selling his business, the Dealer agrees to notify Head Ski Co., Inc. in writing

and to offer for sale to Head Ski Co., Inc. any and all Head Ski products then in the Dealer's possession at the original cost of the products to the Dealer.

This Agreement does not confer any specific or implied exclusive territorial rights to the Authorized Head Ski Dealer. Head Ski Co., Inc. reserves the right to appoint additional Dealers from time to time in locations of its choice where in the judgment of Head Ski Co., Inc. a valid reason for such appointment exists.

A separate Agreement with the consent of the Head Ski Co., Inc. is required for each principal place of business, and for each branch shop where Head Ski Co., Inc. products are to be displayed and sold, by the Authorized Head Ski Dealer.

The Authorized Head Ski Dealer agrees not to sell or transfer Head Ski Products to any shop other than an Authorized Head Ski Dealer."

Head's argument in support of its motion is subdivided into four grounds, viz.: (1) "Consideration of plaintiff's claim is limited to the legal effect of the reasons for defendant's refusal to renew plaintiff's franchise." (2) "There is no violation of Section One of the Sherman Act." (3) "There is no violation of Section Two of the Sherman Act." (4) "Plaintiff is not entitled to additional discovery before the Court rules on this motion for summary judgment."

 With respect to the fourth ground above-stated, the Court is neither aware of, nor has it considered, for the purposes of this motion, anything other than "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits" submitted in support of and *contra* the motion. F.R. Civ.P. 56(c). This being a civil suit under the Antitrust Laws, "Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that [except as to the amount of damages] there is no genuine issue as to any mate-

rial fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c) Fed.Rules Civ.Proc., 28 U.S.C.A. This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * [and where] no genuine issue remains for trial * * * [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). Summary judgments are not appropriate " 'where motive and intent play leading roles.' " White Motor Co. v. United States, 372 U.S. 253, 259, 83 S.Ct. 696, 700, 9 L.Ed.2d 738 (1963).

In Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911) Miles maintained a system of contracts between itself as manufacturer and retail merchants by which Miles attempted to control, not merely the prices at which its agents might sell its products, but also the prices for all sales by all of its dealers at retail, whether such Dealers were purchasers or sub-purchasers from the manufacturer. That system of contractual relationship was held to be invalid under the Sherman Act because it eliminated all competition and fixed the amount which the consumer was required to pay. In so doing the imposition of the terms of such contracts amounted to restraint of trade and, insofar as it affected interstate commerce, was invalid under the Sherman Act. In *White Motor*, supra, which was a Government civil Antitrust Action, a summary judgment for the defendant was reversed where it was based upon agreements between the truck manufacturer and its distributors and dealers by the terms of which territorial limitations were imposed upon the distributors and sales to governmental departments were forbidden. Although the manufacturer did not appeal from the trial court's ruling that the contracts fixing retail prices were unlawful, the Opinion in the Supreme

Court, 372 U.S. at p. 260, 83 S.Ct. at p. 700, stated:

"Price-fixing arrangements, both vertical (United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed. 2d 505; Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502) and horizontal (United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L. Ed. 1129; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219), have also been held to be *per se* violations of the antitrust laws; and a trial to show their nature, extent, and degree is no longer necessary."

 Consideration of plaintiff's claim is not to be limited to the legal effect of the reasons for defendant's refusal to renew the plaintiff's franchise. If, as plaintiff contends, the defendant required that the plaintiff enter into the Dealer's Agreement as a condition precedent to the grant and/or renewal of a franchise to sell the defendant's products, the terms of that agreement operated in restraint of trade and constituted a *per se* violation of Section One of the Sherman Act. If so, it follows that the reasons for defendant's refusal to renew the plaintiff's franchise become immaterial and irrelevant.

In support of defendant's contention that no violation of the Antitrust law arises from the unilateral refusal of a seller to deal with a potential purchaser regardless of the seller's reasons, Head cites United States v. Colgate & Company, 250 U.S. 300, p. 307, 39 S.Ct. 465, p. 468, 63 L.Ed. 992 (1919) and quotes from the Opinion therein that:

"In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal. And, of course, he may an-nounce in advance the circumstances under which he will refuse to sell."

In *Colgate* the Court quoted from Dr. Miles at p. 306, 39 S.Ct. at p. 467:

" 'The retailer, after buying, could, if he chose, give away his purchase, or sell it at any price he saw fit, or not sell it at all; his course in these respects being affected only by the fact that he might by his action incur the displeasure of the manufacturer, who could refuse to make further sales to him, as he had the undoubted right to do.' "

The *Colgate* decision however was construed in United States v. Bausch & Lomb Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944) and Federal Trade Comm. v. Beech-Nut Packing Co., 257 U. S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1922) as meaning no more than that a simple refusal to sell to customers who would not resell at prices suggested by the seller is permissible under the Sherman Act. As United States v. Bausch & Lomb Co., supra, pointed out *Colgate*, supra, held insufficient on demurrer an indictment under the Sherman Act against a manufacturer for requiring its dealers to maintain prices. The indictment alleged only specification of resale prices by the manufacturer and refusal to deal with customers who did not maintain them. The Court held the indictment insufficient because no reference was made in it to a purpose to monopolize, and stated that the Sherman Act "does not restrict the long recognized rights of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal. * * *." F. T. C. v. Beech-Nut Packing Co., supra, while recognizing that "a simple refusal to sell to others who do not maintain the first seller's fixed resale prices is lawful, * * * [adds that] * * * [the seller] may not, consistently with the [Sherman] [A]ct, go beyond the exercise of this right, and by contracts or combinations, express or im-

plied, unduly hinder or obstruct the free and natural flow of commerce in the channels of interstate [commerce]. * * The Beech-Nut Company, without agreements, was found to suppress the freedom of competition by coercion of its customers through special agents of the company, by reports of competitors about customers who violated resale prices, and by boycotts of price cutters." United States v. Bausch & Lomb Co., supra, at p. 722.

■ The franchise agreement between the parties in the present case by its terms expressly restrains trade in favor of Head to the disadvantage of Wurzberg and the retail customers of the latter. The dealer may only acquire the right to sell Head Ski's products at retail provided the dealer executes and becomes bound by the terms of the franchise agreement. The franchise is limited in duration, i. e., to a year or season. The franchise may only be renewed from year to year provided the manufacturer and the dealer execute a new agreement. A further provision of the agreement renders it invalid upon any change of ownership or change of management of the dealer. The franchise may not be assigned or passed on to any other dealer or management without the written consent of Head, and it may be terminated without cause at any time on written notice by either of the parties. In the event of termination, Head shall have the prior right, but not the obligation, to repurchase from Wurzberg any of Head's products then in the dealer's possession at the original cost to the dealer. Despite these limits on the rights of the dealer, the manufacturer reserves the right to appoint additional dealers from time to time in locations of its choice where in its judgment, a valid reason for such appointment exists. A separate agreement, with the consent of Head, is required for each principal place of business and for each branch shop of the dealer where Head Ski products are to be displayed and sold. Finally, the dealer agrees not to sell or transfer any Head Ski products to any shop other than that of an Authorized Head Ski Dealer.

■■ Any doubt that Head is not entitled to judgment as a matter of law is dissipated by Simpson v. Union Oil Co. of California, 377 U.S. 13 at p. 16, 84 S.Ct. 1051, 1054, 12 L.Ed.2d 98 (1964) in which Mr. Justice Douglas, speaking for the Court, stated:

"There is actionable wrong whenever the restraint of trade or monopolistic practice has an impact on the market; and it matters not that the complainant may be only one merchant. See Klor's Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 213, 79 S.Ct. 705, 3 L.Ed.2d 741; Radiant Burners, Inc. v. Peoples Gas Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358."

and further at p. 17, 84 S.Ct. at p. 1054:

"We made clear in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S. Ct. 503, 4 L.Ed.2d 505, that a supplier may not use coercion on its retail outlets to achieve resale price maintenance. We reiterate that view, adding that it matters not what the coercive device is. United States v. Colgate, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, as explained in Parke, Davis, 362 U.S., at 37, 80 S.Ct. 503, 4 L.Ed.2d 505, was a case where there was assumed to be no agreement to maintain retail prices. Here we have such an agreement; it is used coercively, and, it promises to be equally if not more effective in maintaining * * * prices than were the Parke, Davis techniques in fixing monopoly prices on drugs."

I consider the foregoing language peculiarly apposite to the situation disclosed by the record in the case at bar. Because, therefore, the record fails to show that the defendant is entitled to judgment as a matter of law as required by F. R.C.P. 56(c), the motion for summary judgment must be and is denied.

Plaintiff may present an appropriate draft of order.