Ralph T. MANOK, Plaintiff,

v.

SOUTHEAST DISTRICT BOWLING ASSOCIATION, a corporation, and American Bowling Congress, a corporation, Defendants.

No. 67–1467.

United States District Court
C. D. California.

Nov. 3, 1969.

Paul Caruso, Beverly Hills, Cal., for plaintiff.

Parker, McGee, Peckham & Roberts, by White McGee, Jr., Los Angeles, Cal., for defendants.

WILLIAMS, District Judge.

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT TO DEFENDANTS

Plaintiff's action is brought under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1–6 and the Clayton Act, 15 U.S.C. §§

15–16 and asks for damages and an injunction.

Defendant, American Bowling Congress (ABC) is a non-stock membership corporation of male bowlers organized about 1895 to serve the interest of its members. It established uniform conditions and methods of playing American Ten Pins by and between its members to assure them of standardization in playing conditions and equipment. ABC also maintains and enforces playing rules, and sanctions (approves) bowling leagues and tournaments. It checks bowling establishments upon their request to ascertain that their lanes and equipment meet specified measurements and conditions qualifying for ABC sanctioned league and tournament play. It conducts an annual tournament, makes scoring achievement awards, publishes a monthly bowling magazine and distributes its rules and specification books and information on scoring the game.

ABC operates its services primarily from membership dues. It is governed by its member bowlers through a delegate system. Officers and directors are elected annually at an open meeting by delegates from local ABC associations. Notice of this meeting is given to all associations who submit names of nominees for the various positions to a Nominating Committee which changes from year to year. The president, 10 vice-presidents and its directors receive no salaries or other compensation except reimbursement for traveling expenses and in the case of the president office expense.

As stated in its constitution the primary objectives of the ABC are,

"Adoption and enforcement of uniform laws, rules, qualifications, conditions and method of playing the game of American Ten Pins, and to govern bowlers, teams, leagues, and tournaments in the membership, and to conduct annually an American Bowling Congress championship tournament."

Defendant, Southeast District Bowling Association is a local bowling association chartered and affiliated with ABC. All members of ABC are also members of a local bowling association like Southeast. Local associations are independently run by local bowlers and are only subject to the constitution and specifications of the ABC.

Though the ABC has grown in size since its inception there have been very few changes in the basic playing rules or regulations. Two of these rules which are relevant to the instant case are 26(b) and 29.[1] These rules essentially seek to eliminate unfair practices on the part of members in sanctioned tournaments and prohibit a bowler from participating in a tournament under an assumed name. This is to prevent bowlers with low handicaps from using other names to give themselves a competitive advantage through a higher handicap.

Plaintiff, Ralph T. Manok was a member in good standing of the ABC and participated in tournaments and leagues sanctioned by it. He also had developed a bowling device called "Mono-Grip" and had been in the process of marketing it.

[1]. Rule 26 provides "any member of the American Bowling Congress violating the provisions of this rule as outlined below shall be liable for the penalties indicated, and anyone who is not a member of the Congress but who has violated the provisions of this rule shall be refused membership in the Congress until the Executive Board of Directors of the Congress approves his application. (b) Placing the game of ten pins in jeopardy of unfair criticism by the use of dishonest or disreputable tactics in connection with game of bowling. Penalty—suspension of membership.

Rule 29 provides that "any person who bowls in an unsanctioned league, who bowls under an assumed name, who bowls under the name of an entrant scheduled to bowl in a sanctioned tournament but unable to attend, or who is under suspension, or any team which employs a person herein described, both the person individually and the team collectively shall forfeit their entry. All persons who were involved in the affair and found guilty may be suspended from membership in the ABC."

Plaintiff had been acquainted with Mike Frank, another bowler and had bowled with him in tournaments. In August, 1962, defendant, Southeast, learned that Mike Frank had allegedly entered ABC sanctioned tournaments using the name of another bowler, Mike Greer, who had a higher handicap than Frank. Information also came to Southeast that plaintiff, Manok, had bowled as Frank's partner in the tournaments where Frank had used the name of Greer, knowing of the fraud Frank was perpetrating, and had qualified for prize money. Plaintiff has continuously denied this allegation of wrongdoing but tendered his resignation to the ABC at or about the same time a notice of hearing was sent to plaintiff by Southeast in October, 1962. The fact finding hearing held by Southeast in November, 1962 eventually resulted in plaintiff's suspension from ABC for knowingly bowling in a tournament with another bowler who was using an assumed name. This suspension came about on February 23, 1963. On October 5, 1967, plaintiff instituted this action claiming a violation of the Sherman Act in that,

(a) Defendant corporations have conspired to restrain trade through unreasonable restrictions upon membership and readmittance to membership in defendant corporations, and

(b) Defendant corporations have unreasonably restrained the plaintiff from participating in his profession by refusing to readmit the plaintiff to membership in defendant corporations and thereby preventing him from competing in leagues and tournaments sanctioned by defendant corporations, and,

(c) Defendant corporations have unreasonably discriminated against the plaintiff by suspending the plaintiff through the use of vague, unfair and unequal rules and regulations as to both membership and participation in defendant corporations, and

(d) Defendant corporations did employ said rules and regulations to contractually restrain the plaintiff from practicing his profession by prohibiting the plaintiff from competing in any leagues or tournaments sanctioned by the defendant corporations.

Plaintiff's second cause of action alleges that defendants published notices of the plaintiff's suspension and refused to readmit plaintiff into membership and thus conspired to restrain trade by unreasonably exercising influence over their membership to prejudice them against patronizing the plaintiff's place of business and using his invention of a "Mono-Grip" bowling ball device.

The defendants have moved for summary judgment upon the grounds:

(1) That there is no genuine issue as to any material fact;

(2) That the action brought by the plaintiff is barred by the Statute of Limitations;

(3) That the plaintiff's complaint fails to state a claim upon which relief can be granted;

(4) That the court herein lacks jurisdiction over the subject matter of this cause of action;

(5) That the said defendants and each of them are entitled to judgment against plaintiff as a matter of law.

Defendants base their motion upon the pleadings, an affidavit of one Ken Hurley, the deposition of plaintiff and filed exhibits.

Plaintiff filed his opposition to the motion and sets forth the following as issues he contends are triable:

(1) The existence of a combination between Southeast and ABC, the intent and purpose of which is to restrict trade through unreasonable restrictions on membership and readmittance to membership.

(2) Whether or not defendant corporation discriminated against plaintiff by suspending plaintiff through the use of vague, unfair and unequal rules.

(3) The fact and extent of damage suffered by plaintiff because of his suspension.

(4) The actual extent of the power of the American Bowling Congress over the game of bowling across the nation including control over tournaments, equipment and the entire occupation of being a professional bowler.

The court in considering the motion has reviewed all the pleadings, supporting affidavits, the deposition of plaintiff and the various memoranda of points and authorities and concludes that the motion must be granted.

This court feels that a litigant should not be easily deprived of his day in court except upon a clear showing that he presents no admissible evidence which is worthy of consideration by a jury or other trier of fact. It seems clear in this case that there is no genuine issue as to any *material* fact. Rule 56(c) of the Federal Rules of Civil Procedure provides,

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * "

■ Summary judgments are applicable to actions under the Sherman Act as they are to any other type of actions legal or equitable. United States v. Krasnov, 143 F.Supp. 184 (E.D.Pa.1956), affirmed 355 U.S. 5, 78 S.Ct. 34, 2 L.Ed.2d 21 (1957).

However, summary judgment is authorized only where the moving party is entitled to judgment as a matter of law and where it is clear that no genuine issue remains for trial. The purpose of this rule is not to cut litigants off from their right of trial by jury if they have issues to try. Wurzberg Bros., Inc. v. Head Ski Company, 276 F.Supp. 142 (D.N.J.1967); Freedman v. Philadelphia Terminals Auction Co., 145 F.Supp. 820 (E.D.Pa.1956).

■ It must appear that there is no substantial evidence on a tendered issue or that the tendered evidence is in its nature too incredible to be accepted by reasonable minds, or that conceding its truth, it is without legal probative force. Whitaker v. Coleman, 115 F.2d 305 (5th Cir. 1940).

■ Such a drastic procedure should be used sparingly so that no plaintiff, having a scintilla of merit to his cause should be denied his day in court. Vogelstein v. National Screen Service Corp., 204 F.Supp. 591 (E.D.Pa.1962); Industrial Building Materials, Inc. v. Interchemical Corp., 278 F.Supp. 938 (C.D. Cal.1967). But the question whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## EVIDENCE OF A CONSPIRACY

■ Plaintiff's pleading in opposition to the motion largely only restates the allegations contained in his complaint and these are conclusions of law. He relies primarily upon the alleged activities of a Bill Franklin and a Stan Schreier as evidence that the conspiracy exists. Plaintiff contends that in 1964 Franklin made the following statement to contestants in a bowling tournament who were about to use plaintiff's "Mono-Grip" device; "What are you doing using that? You know this man has been blackballed. We don't support anyone who has been suspended." Plaintiff claims he learned of this from one Edward S. Becker, but Franklin's affidavit denies that any such statements were ever made and Becker's affidavit denies that he ever heard Franklin make the statement. Even assuming that such statements were made by Franklin, their existence is not sufficient to place the issue of a conspiracy in dispute. At the time of the alleged making of the statements, Franklin was only a member of ABC and Southeast and not an officer. However, he was secretary of the California State Bowling Association, chartered by ABC to

conduct an annual championship tournament.

As to Mr. Schreier, Assistant Secretary of Southeast District, plaintiff contends:

(1) That his suspension was primarily due to the efforts of Schreier to put the blame on the plaintiff for the acts of Mike Frank, and

(2) That after plaintiff's suspension, Schreier wrote a damaging letter sending copies to various newspapers, and

(3) That Schreier caused the posting of a newspaper article which detailed the suspension of plaintiff and stated that he was ineligible to compete in tournaments, in various bowling centers in the southland.

Plaintiff's contention that Schreier was "out to get" him is supported by no evidence and goes no distance in supporting a charge of conspiracy.

The letter from Schreier was written to a Ray Rosenbaum, a sports editor for the Southern California Bowling News, criticizing an earlier Rosenbaum editorial about plaintiff's suspension. The alleged conspiracy gains scant support from this letter.

If newspaper articles were posted in bowling alleys there is absolutely no evidence that Schreier had anything to do with such posting. Plaintiff testified in his deposition that it was merely an assumption on his part that Schreier had caused it to be posted.

On Page 17 of plaintiff's deposition, plaintiff was asked:

"Q: You have mentioned Mr. Schreier and Mr. Franklin as two who were involved in the instigation or advancement of the conspiracy referred to in the complaint. Can you identify any other person?

A: Not at the present time.

Q: Do you have any knowledge that Mr. Franklin and Mr. Schreier worked together for the purpose of furthering the conspiracy referred to in the complaint?

A: No.

Q: Am I correct in stating that, to the best of your knowledge, the conspiracy referred to in the complaint was a conspiracy on the part of Mr. Schreier and on the part of Mr. Franklin?

A: Yes.

Q: And the knowledge that you have of the acts done by them or either of them in the instigation or furtherance of the conspiracy was such as you have already related?

A: Yes."

This court finds that the evidence tendered in opposition to the motion for summary judgment on the subject of the existence of a conspiracy is too incredible to be accepted by reasonable minds and is without legal probative force. Whitaker v. Coleman, 5 Cir., 155 F.2d 305.

## VAGUE, UNFAIR AND UNEQUAL RULES

Plaintiff does not criticize the rules but states that his suspension was disproportionate to the violation he was charged with. He must not only offer evidence that his suspension was due to a discriminatory application of defendants' rules and regulations but also that such application was in furtherance of a conspiracy in restraint of trade. The courts have followed a general policy of refusing to review suspension proceedings of members from voluntary associations without a clear showing of bad faith. Smith v. Kern County Medical Association, 19 Cal.2d 263, 120 P.2d 874; Kronen v. Pacific Coast Society of Orthodontists, 237 Cal.App.2d 289, at 301, 46 Cal.Rptr. 808; Berkeley Teacher's Association v. Board of Education, 254 Cal.App.2d 660, 62 Cal.Rptr. 515.

## EXTENT OF DAMAGES SUFFERED BY THE PLAINTIFF

Even if this court were to assume that the plaintiff has been damaged as a proximate result of the acts of the defendant, a genuine dispute as to the extent of those damages is irrelevant to the issue of summary judgment here. The plaintiff must first

demonstrate to this court that a dispute as to liability exists under the Sherman and Clayton Anti-Trust law before attempting to assert that the question of damages is in issue.

Rule 56(c) of the Federal Rules of Civil Procedure provides in part:

"A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Though admittedly this rule is focused on situations where a plaintiff has applied for summary judgment, there is nothing to indicate that it does not have application to the present situation. The plaintiff must show that there is a dispute as to an invasion of some legal right before any legal dispute as to the extent of his damage can arise.

## POWER OF ABC OVER THE GAME OF BOWLING

■ Though the plaintiff in his affidavit and his deposition has alleged that the ABC does occupy an enormous position in this field, the plaintiff has not demonstrated that this fact in any way relates to a conspiracy in restraint of trade by the defendants. This court realizes that the extent of a defendant's participation in the relevant geographical market is extremely relevant to Anti-Trust violations. However, size and strength only become material when they are linked to some conspiracy by individuals or others to restrict competition and control prices in their relative areas.

Mere size is not outlawed by provision of this section against monopolizing trade, but size is an earmark of monopoly power. United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948).

Size itself does not create an unlawful monopoly within meaning of sections 1–7 of this title. Kansas City Star Co. v. United States, 240 F.2d 643, (8th Cir. 1957) cert. denied 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957).

Therefore, this court finds that an allegation of size and power alone, unsupported by any competent evidence that said size results in a restriction of trade in interstate commerce, is insufficient to create a genuine issue of fact that precludes the granting of summary judgment for the defendants.

## STATUTE OF LIMITATIONS

■■ Plaintiff's original suspension occurred more than four years prior to the filing of this complaint. The subsequent denials of reinstatement occurred within the four-year period. In a civil conspiracy, the statute runs from the commission of the last overt act alleged to have caused damage. Plaintiff argues that the subsequent denials of reinstatement were overt acts that caused damage and as such are within the applicable period. This court rejects such argument and holds that the statute runs from the time of the original suspension. 15 U.S.C. § 15b; Burnham Chemical Co. v. Borax Consolidated, Ltd., 170 F.2d 569 (9th Cir. 1948), certiorari denied 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949); Steiner v. 20th Century-Fox Film Corp., 232 F.2d 190 (9th Cir. 1956).

Having concluded that the motion should be granted for the reasons stated hereinbefore this court need not reach any conclusion concerning defendants' claim that defendants are not in commerce and that the court lacks jurisdiction over the subject matter of this cause of action.

Defendants are ordered to prepare findings of fact and conclusions of law consonant with this opinion.