## E. Christman DAWN, individually and doing business as the Game Company, Plaintiff,

### v.

## STERLING DRUG, INC., a Delaware corporation, and Dancer-Fitzgerald-Sample, Inc., a Delaware corporation, Defendants.

### No. 69–862.

United States District Court,
C. D. California.

Oct. 23, 1970.

E. Christman Dawn, in pro. per.

Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants.

**360**

## MEMORANDUM OPINION

DAVID W. WILLIAMS, District Judge.

In 1962, plaintiff, E. Christman Dawn, registered the name "Tower of Babble" with the United States Patent Office as a trademark for "Equipment Sold As A Unit For Playing an Educational Language Game" in class 22. He thereafter began manufacturing and selling with modest success a game using that name and which involves the use of a board, cards with French and Spanish words printed thereon and poker chips for keeping the score. In the succeeding years the plaintiff spent approximately $600.00 in advertising efforts and sold approximately 4000 games prior to 1966. In the past four years he has occupied himself in other endeavors and has manufactured and sold very few of the games. He presents no evidence to show that this reduction in his business was in any way attributable to the defendants.

Defendant Sterling Drug, Inc. manufactures a variety of products, one of which is Bayer Aspirin, a long-established and well-advertised household remedy. Defendant Dancer-Fitzgerald-Sample, Inc. (Dancer) is an advertising agency employed by Sterling to promote the sale of Bayer Aspirin. Dancer prepared certain Bayer Aspirin advertisements using the phrase "tower of babble"[1] as a descriptive caption and these advertisements were subsequently published in national magazines and in medical journals and reprinted for point of sale display. The advertising pictures a stack of assorted pills and headache remedies with the caption "Tower of Babble". There follows a text which reads, "confused by claims? by shapes and sizes? by strange-sounding ingredients? When you need fast relief from headache pain, don't forget this fact: Bayer is 100% aspirin. And aspirin is the strongest pain reliever you can buy. No wonder Bayer works wonders."

Plaintiff alleges in his complaint that the defendants Sterling and Dancer have appropriated and brought about the misuse of plaintiff's Tower of Babble trademark in connection with the sale, offering for sale, distribution and advertising of Bayer Aspirin in commerce. It is further alleged that the use by defendants of the words Tower of Babble was without plaintiff's consent or permission and was with full knowledge of plaintiff's use of said trademark and that said appropriation by defendants was likely to cause confusion, mistake and deception, in that the trade public is likely to assume that there is a connection between plaintiff or his product and the business of defendant Sterling Drug, Inc. or its product. The complaint alleges a cause of action for trademark infringement, dilution of trademark, injury to business reputation and unfair competition.

Defendants have moved for a summary judgment in their favor under Rule 56 (b), Federal Rules of Civil Procedure. Although plaintiff is acting in propria persona, he has done a remarkable job in presenting his opposition to the motion. However, after a careful consideration of all the pleadings and a review of all the defense produced through pretrial discovery, it is necessary to conclude that there are no substantial triable issues and the motion of defendant must be granted.

---

1. The phrase "Tower of Babble" on which plaintiff has a registered trademark apparently derives from two separate language strains. The phrase "Tower of Babel" derives from the Hebrew language and originates in a biblical story involving a multitude of mutually unintelligible languages, made so by God to cause confusion. Genesis 11:4–9. "Babel" today is used to mean a "scene of noise or confusion, or a confusion of cries, voices, or languages". Webster's New Collegiate Dictionary. The word "babble" derives from the Middle English, from the same word as the modern word "baby". As a verb it means to "talk as a little child or idiot, indistinctly, meaninglessly or incoherently; to chatter"; as a noun, it means "idle talk, prattle". Webster's New Collegiate Dictionary.

■ A motion for summary judgment is authorized only where the moving party is entitled to judgment as a matter of law and where it is clear that no genuine issue remains for trial. The purpose of this rule is not to cut litigants off from their right of trial by jury if they have issues to try, Wurzberg Bros., Inc. v. Head Ski Co., 276 F.Supp. 142 (D.N.J.1967). It must appear that there is no substantial evidence on a tendered issue or that the tendered evidence is in its nature too incredible to be accepted by reasonable minds, or that conceding its truth, it is without legal probative force. Whitaker v. Coleman, 115 F.2d 305 (5th Cir. 1940). Such a drastic procedure should be used sparingly so that no plaintiff having a scintilla of merit to his cause should be denied his day in Court. Vogelstein v. National Screen Service Corp., 204 F.Supp. 591 (E.D.Pa.1962).

■ But the question whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). A party moving for summary judgment bears the burden of showing the absence of any genuine issue of fact requiring a trial. 6 Moore's Federal Practice, § 56.15(3). Thereupon the opposing party must offer countervailing evidence that such an issue does exist—and, of course, if it is present, the Court may not grant summary judgment. However, Rule 56 of Federal Rules of Civil Procedure has not been rendered so sterile that a trial must be granted upon a claim which the papers show has no basis in fact. The rule should not be used by the Court for the trial of disputed questions of fact upon affidavits, but when it is invoked by either party to a case and a showing is made by the movant of the absence of any genuine triable issue, the burden rests on the opposite party to show that he has a plausible ground for the maintenance of the cause of action alleged in his complaint, or if a defendant, that he has a ground of defense fairly arguable and of a substantial character. Morgan v. Sylvester, 125 F.Supp. 380, 389 (S.D.N.Y.1954). Mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment. Piantadosi v. Loew's, Inc., 137 F.2d 534, 536 (9th Cir. 1943) affirming the judgment of Judge Yankwich who granted summary in a copyright case.

While it is true that summary judgment is somewhat infrequently granted in trademark and patent infringement cases, this is so because those cases typically involve disputes as to material facts, and not because there is anything inherent in them which makes summary judgment improper. For example, the remedy of summary judgment was held to be available in a patent infringement suit where no factual issues were raised and there was no need for expert testimony. Alex Lee Wallau v. J. W. Landenberger Co., 121 F.Supp. 555 (D.C.N.Y. 1954). Summary judgment is proper in a copyright infringement case where there are no triable issues. Millstein v. Leland Hayward Co., 10 F.R.D. 198.

■■ The trier of facts in a trademark infringement case must be concerned whether there is a likelihood that the buying public is being confused or deceived, or is likely to be confused or deceived, as to the source or origin of goods they are buying. 15 U.S.C. § 1114; Continente v. Continente, 378 F.2d 279 (9th Cir. 1967). "The function of a trademark is to identify the origin or ownership of the article; the essence of the wrong is the passing off of the goods of one manufacturer or vendor as those of another." Dresser Industries, Inc. v. Heraeus Englehard Vacuum, Inc., 395 F. 2d 457 (3rd Cir. 1968). Plaintiff must show that the defendants' use of his trademark had the effect or is likely to have the effect of misleading plaintiff's customers as to the origin of the goods sold, thus taking away plaintiff's trade.

■ Defendant's product, Bayer Aspirin, was a nationally accepted head-

ache remedy many years prior to the claimed first use by plaintiff of the expression "tower of babble." Sterling has engaged in widespread advertising campaigns to promote its aspirin product and there must be very few people in the United States who are unacquainted with that pain killer and who do not know of its claimed benefits. On the other hand, the plaintiff is a small manufacturer of a little advertised product which consists of an educational language game. The relative sizes of the two businesses and the wide difference in the types of products involved in this dispute is of no importance in and of itself. However, these factors do reflect upon whether the defendants' use of the words "Tower of Babble" in the promotion of Bayer's aspirin would have the tendency in the market place to deceive consumers to believe that defendant's product had its source in plaintiff's business or vice versa.

It is clear from the evidence that there is little if any possibility that the consumer public would confuse defendant's product with the game allegedly manufactured by plaintiff. Promotional advertising by defendant Sterling of its product would point up the medicinal benefits of aspirin to a person having a headache and any advertising by plaintiff of his product would emphasize the enjoyment and educational advantage to come from the playing of his game during leisure hours. It seems inconceivable that the use by defendant Sterling of the phrase "Tower of Babble" in the promotion of aspirin would confuse its product with plaintiff's game or have any tendency to bring about an intrusion into plaintiff's profits; nor does it seem likely that anyone knowing plaintiff as a manufacturer of games and reading Sterling's advertisement of Bayer Aspirin which includes the use of the phrase "Tower of Babble" would be likely to believe that there was a connection between the two products or that plaintiff was the manufacturer of Bayer Aspirin. Likewise, defendant's aspirin is being sold as Bayer Aspirin and not as "Tower of Babble" aspirin.

Defendants' reliance on the case of B & L Sales Associates v. H. Daroff & Sons, Inc., 421 F.2d 352 (2nd Cir. 1970) seems well-placed. There the plaintiff registered as a trademark the phrase "Come On Strong" for work clothing and leisure wear. The defendant, H. Daroff and Sons, Inc., owned the trademark "Botany 500" and manufactured that well-known line of men's suits.

Defendant ran an advertisement featuring the words "Come On Strong" and on the line directly below in smaller type the phrase "With Botany 500". In affirming summary judgment for the defendant, the Court of Appeals stated that "it is quite obvious that the phrase 'Come On Strong' was intended only to describe the manner in which Botany 500 clothing would assist the purchaser in projecting a commanding, confident, 'strong' image to his friends and admirers, and no intent to use the phrase in the trademark sense can be inferred from these promotional materials."

I find no substantial evidence of any kind of an infringement by defendants of plaintiff's trademark.

## DILUTION OF TRADEMARK

Plaintiff's second cause of action alleges that the defendants' appropriation of his trademark was long subsequent "to plaintiff's Tower of Babble trademark having become identified in the minds of the trade and public as being, among other things, recognitory of plaintiff's educational language games, * * and denotative and persuasive of the pedagogic, practical, therapeutic and entertainment value, and thereby the desirability thereof." He further alleges that the appropriation by defendants of his trademark is likely to dilute the distinctive quality thereof, in that the effective selling power of plaintiff's trademark is likely to be impaired by the blurring of the identification of plaintiff's product with the product of defendant Sterling.

Accordingly, plaintiff's second cause of action requests damages and injunctive relief based upon alleged trademark dilution. Dilution, as a basis for recovery independent of the likelihood of confusion required in 15 U.S.C. § 1114, has not been recognized by the Federal Courts. Champion Paper and Fibre Co. v. National Association of M. I. A., 102 U.S.App.D.C. 10, 249 F.2d 525 (1957). However in 1967, § 14330 of the California Business & Professions Code was enacted to provide as follows:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

█ The recency of the statute leaves no reported cases to guide us. Authority indicates, however, that the purpose of statutory protection from trademark dilution is to prevent truly coined marks from becoming a part of the ordinary language. Schechter, The Rational Basis of Trademark Protection, 40 Harv.L.Rev. 813, 829–830 (1927). Each of the words in the expression "Tower of Babble" are of common usage and are hardly within the protective intent of the California statute at least insofar as the award of damages is concerned. It is to be noted, however, that § 14330 is one for injunctive relief only and gives that relief "not withstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Out of an abundance of fairness, I have decided to enjoin defendant from the further use of the phrase "Tower of Babble" in its advertising. This seems to take on the award of summary judgment to the plaintiff although he is not the movant here, but in these circumstances, I see nothing in the Rules or the cases to prevent it. In fact, Factora v. District Director of United States Immigration and Naturalization Service, 292 F.Supp. 518, 521 (D.C. C.D. Cal.1968) and Walter v. Dunlap, 250 F. Supp. 76 (D.C.Pa.1966), affirmed 368 F.2d 118 (3rd Cir. 1966), seem to authorize this action.

Inasmuch as the statutory remedy is limited to injunctive relief, plaintiff's request for damages for trademark dilution must be denied.

## INJURY TO BUSINESS REPUTATION

There is no substantial evidence of any kind of a significant reputation of plaintiff's trademark for purposes of considering the prayed-for relief under this cause of action. Furthermore, even if we assume that the trademark had a protectible reputation, plaintiff has produced no evidence to suggest that defendant's use of the phrase "Tower of Babble" has caused any damage to that reputation. Defendants have merely used the phrase in a descriptive sense to develop the conclusion that the claims made for competitive pills are "foolish or idle talk". Therefore, defendants' motion for summary judgment must be granted as to this cause of action.

## UNFAIR COMPETITION

█ For all the factual reasons given hereinbefore, there is no substantial evidence of any kind that there was any unfair competition practiced by any of the defendants as against the plaintiff and under this alleged cause of action plaintiff is entitled to no relief.

Defendants are hereby enjoined from any further use of the phrase "Tower of Babble" or "tower of babble" in their advertising or promotion of Bayer Aspirin or any other product. Defendants are further ordered to prepare Findings of Fact, Conclusions of Law, and a Judgment consistent with this opinion.