Allen REARICK, and Sara Rearick,
d/b/a Gladell Farm, Plaintiffs,

v.

HOLSTEIN–FRIESIAN ASSOCIATION
OF AMERICA, a New York
corporation, Defendant.

Civ. A. No. 76–1019.

United States District Court,
W. D. Pennsylvania.

June 29, 1979.

John A. Metz, Jr., Pittsburgh, Pa., for plaintiffs.

H. Woodruff Turner, Pittsburgh, Pa., for defendant.

## MEMORANDUM

ZIEGLER, District Judge.

### I. *History of Case*

Plaintiffs, Allen and Sara Rearick, are owners of a dairy farm in Millheim, Pennsylvania, which is operated as a partnership under the name of Gladell Farm. The Rearicks own a herd of Holstein-Friesian cattle and are engaged in the business of selling milk and raising cattle for breeding and sale. Defendant, Holstein-Friesian Association of America ("the Association"), is a nonprofit membership corporation consisting of 40,000 dairymen in the United States. The Association maintains a registry of pure breed Holstein-Friesian cattle and provides a variety of services including the Dairy Herd Improvement Registry Program ("the DHIR Program"). The DHIR Program is designed to furnish dairymen with systematic records of the milk and butterfat production of the herd.

The Rearicks are members of the Association and were enrolled in the DHIR Program until July 26, 1974, when the Executive Committee of the Association voted to suspend their DHIR testing privileges pending adjudication of charges that plaintiffs had engaged in fraudulent practices in connection with their production records. On March 10, 1975, following a three-day hearing, the Executive Committee voted to cancel plaintiffs' DHIR production records for the test years ending April 30, 1973, and April 30, 1974, and to deny such privileges in the future. The Executive Committee found that the records of plaintiffs were so inaccurate as to be dishonest and that they knew or should have known of this fact. Plaintiffs were present at the hearing and represented by counsel, but offered no evidence on their own behalf. Following an appeal to the Board of Directors, the Board affirmed the Executive Committee's ruling on April 24, 1975.

Plaintiffs instituted this action seeking injunctive relief and damages alleging that the actions of the Board and the Executive Committee in canceling their production records and denying testing privileges to them constituted a conspiracy in restraint of trade and an attempt to monopolize in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2 (1970).

At a pretrial conference before the district court on February 16, 1979, the Association contended that the truth or falsity of the specific charges preferred against plaintiffs should not be deemed an issue in this case. The parties urged the court to resolve the issue in advance of trial, since the pretrial preparation of counsel will be affected by the ruling. The court ordered briefs on the question and oral argument was conducted on April 19, 1979.[1]

We hold that the truth or falsity of the charges preferred by the Executive Committee and the Board is not an issue in this civil antitrust action against the Association.

### II. *Discussion*

■ Trade associations which wield great power over members and nonmembers are subject to the restrictions of the Sherman Act. *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963); Haddock, *The Right of Trade Associations to Deny Membership and Expel Members*, 13 Antitrust Bull. 555 (1968). In assessing whether an expulsion or suspension from membership or a denial of privileges from a trade association violates the Sherman Act, the courts have generally applied the "rule of reason" and considered three questions: (1) was the association's action intended to accomplish an end within the contemplation of the policy justifying self regulation; (2) was the restraint imposed reasonably necessary to achieve the goal; and (3) did the association provide

---

1. We will treat the request as a motion in limine by the Association to exclude from this action the merits of the charges against plaintiffs.

adequate procedural safeguards to insure that the restraint was not arbitrary. *Hatley v. American Quarter Horse Association*, 552 F.2d 646 (5th Cir. 1977); Comment, *Trade Association Exclusionary Practices: An Affirmative Role for the Rule of Reason*, 66 Colum.L.Rev. 1486, 1504–1505 (1966). Thus, in *Blalock v. L.P.G.A.*, 359 F.Supp. 1260 (N.D.Ga.1973), the suspension of the plaintiff from the Ladies Professional Golf Association was found violative of section 1 of the Sherman Act because the Association had unfettered and totally subjective discretion. *Id.* at 1265. In contrast, the expulsion of a member in *Deesen v. P.G.A.*, 358 F.2d 165 (9th Cir. 1966), was found without the proscriptions of section 1 because the rules were "nondiscriminatory" and not applied in an "arbitrary and unreasonable manner." *Id.* at 168. In neither case was the merits of the Association's action considered by the respective courts in reaching their decisions.

The leading case on the antitrust restrictions imposed upon trade associations is *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). There, the Supreme Court held that the New York Stock Exchange violated section 1 when it denied privileges to a nonmember. The thrust of the Court's holding was that the denial of privileges by a trade association cannot be justified unless the party affected is accorded fair procedures, such as notice and an opportunity to be heard. 373 U.S. at 365, 83 S.Ct. 1246.

The Supreme Court specifically left unanswered the issue at bar, that is, whether the merits of the Association's decision should be relitigated. In this regard the Court noted:

> Since it is perfectly clear that the Exchange can offer no justification under the Securities Exchange Act for its collective action in denying petitioners the private wire connections without notice and an opportunity for hearing, and that the Exchange has therefore violated § 1 of the Sherman Act, 15 U.S.C. § 1, and is thus liable to petitioners under §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26,

there is no occasion for us to pass upon the sufficiency of the reasons which the Exchange later assigned for its action. Thus there is also no need for us to define further whether the interposing of a substantive justification in an antitrust suit brought to challenge a particular enforcement of the rules on its merits is to be governed by a standard of arbitrariness, good faith, reasonableness, or some other measure. It will be time enough to deal with that problem if and when the occasion arises. Experience teaches, however, that the affording of procedural safeguards, which by their nature serve to illuminate the underlying facts, in itself often operates to prevent erroneous decisions on the merits from occurring.

373 U.S. 341, 365–366, 83 S.Ct. 1246, 1261–62, 10 L.Ed.2d 389.

Since *Silver*, several district courts have sought to define a judicial role in an antitrust suit where a decision of an association is challenged on the merits. In *Manok v. Southeast District Bowling Association*, 306 F.Supp. 1215 (C.D.Cal.1969), a bowler instituted an action alleging that his suspension from the Bowling Association violated the antitrust laws. The court noted:

> The courts have followed a general policy of refusing to review suspension proceedings of members from voluntary associations without a clear showing of bad faith.

*Id.* at 1220.

The most extensive analysis of this question was undertaken in *McCreery Angus Farms v. American Angus Association*, 379 F.Supp. 1008 (S.D.Ill.1974). In *McCreery*, the plaintiffs were suspended from the Angus Association due to an alleged failure to obey a rule relating to blood typing. The district court granted injunctive relief citing the defendant's failure to provide adequate procedural safeguards. However, the court carefully delineated the relevant inquiry in an antitrust action with regard to disciplinary action by an association:

> The function of this Court is limited as it does not intend to sit generally as a Court of Review as to the merits of the Associa-

tion's actions nor to substitute its judgment as to the merits of the allegations. That is purely Association business.

379 F.Supp. at 1010. Later in the opinion, the court explicated:

> This Court is not going to pass on whether any rule was in fact broken by the Plaintiffs, and certainly will not now attempt to resolve any question about the existence or identity of two bulls. It will confine itself only to the adequateness and fairness of the rules and the due process aspects of the hearings. However, as a practical matter, this underlying current, even though unsubstantiated in this record, cannot be entirely overlooked. *This Court sees the resolution of those substantive matters to be only for Association determination provided "due process" is followed.*

*Id.* at 1011 (emphasis added).

Commentators who have assessed the restrictions imposed upon trade associations by the Sherman Act are in accord with the reasoning of *McCreery.* Thus, one author has noted:

> Judicial enforcement of the substantive limits on association behavior involves ascertaining the grounds of the association's conduct and determining whether the circumstances justified action on those grounds. The courts have generally refused, however, to investigate de novo the merits of an association's determination. Such an inquiry normally would be incompatible with the notion of judicial deference to group autonomy, and insofar as familiarity with the context in which a case arises contributes to its correct disposition, the association may be assumed to provide a more competent tribunal. Moreover, granting a hearing de novo as a matter of course would impose an unnecessary burden on the courts if they could otherwise be satisfied that the determination had been made in a manner which afforded adequate protection of the member's interests.

*Developments in the Law—Judicial Control of Actions by Private Associations,* 76 Harv. L.Rev. 983, 1020 (1963). Similarly, another author has remarked:

> [T]he courts have frequently required these groups to give notice and a hearing to parties affected by the exclusionary practices. The records compiled in such proceedings have permitted the courts to review the association's factual determinations without a de novo hearing. . .

> \*    \*    \*    \*    \*    \*

> On the basis of such an examination of the record, the court would be better able to determine the reasonability of the restraint in light of any purported justifications. It would thus be more readily ascertainable whether group action was arbitrary, overly severe, or unrelated to the policy favoring self-regulation.

Comment, *Trade Association Exclusionary Practices: An Affirmative Role for the Rule of Reason,* 66 Colum.L.Rev. 1486, 1508 (1966).

The thrust of these comments reinforces our view that the merits of disciplinary action by a trade association against a member should not be relitigated in an antitrust suit. Otherwise, the fact-finder would be substituting its judgment for the judgment of the association. This does not mean, however, that an association is insulated from money damages under the antitrust laws with regard to treatment of its own members. The trier of fact must determine if the procedures employed by such an entity were fair, whether the restraint imposed was reasonable and whether the decision by the association was arbitrary or made in bad faith.

Accordingly, we hold that, in this case, the truth or falsity of the specific charges preferred against plaintiffs is not an issue for the jury and any evidence offered by plaintiffs relating solely to the merits of these charges will be excluded at trial.